**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

FRANCISCO ANTONIO BURGOS,              :
                                                            Civil Action No. 03-4139 (FLW)
                Petitioner,            :

                v.                     :      **OPINION**

C.J. DeROSA, Warden,                   :

                Respondent.            :


**APPEARANCES:**

Petitioner pro se                    Counsel for Respondent
Francisco Antonio Burgos             Dorothy J. Donnelly
#50408-066                           Assistant U.S. Attorney
F.C.I. Fort Dix                      402 East State Street
P.O. Box 2000                        Room 430
Fort Dix, NJ 08640                   Trenton, NJ 08608


**WOLFSON**, District Judge

        Petitioner Francisco Antonio Burgos, a prisoner currently

confined at the Federal Correctional Institution at Fort Dix, New

Jersey, has submitted a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2241.[1]

_____

        [1] Section 2241 provides in relevant part:

        (a) Writs of habeas corpus may be granted by the
        Supreme Court, any justice thereof, the district courts
        and any circuit judge within their respective
        jurisdictions.
        (c) The writ of habeas corpus shall not extend to a
        prisoner unless-- ... (3) He is in custody in violation
        of the Constitution or laws or treaties of the United
        States ... .

## I.  BACKGROUND

On May 12, 1999, pursuant to his conviction for various drug-related crimes, Petitioner was sentenced in the U.S. District Court for the Eastern District of Pennsylvania to a term of imprisonment of 246 months.  Petitioner will become eligible for release no sooner than 2016.

Petitioner is a citizen of the Dominican Republic who is a lawful permanent resident of the United States.  In connection with Petitioner's conviction, the Immigration and Naturalization Service ("INS")[2] issued a detainer pursuant to 8 C.F.R. § 287.7(a).[3]

---

[2] The Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135, transferred the immigration enforcement functions of the Commissioner of Immigration and Naturalization (or any officer, employee, or component of the Immigration and Naturalization Service ("INS")) to the Secretary of Homeland Security.  As of March 1, 2003, the INS ceased to exist and its functions were transferred to the Department of Homeland Security.  The former INS's enforcement, detention, and removal functions are within the responsibility of the Bureau of Immigration and Customs Enforcement.  For the sake of convenience, the Court will continue to refer to the INS in this Opinion.

[3] In pertinent part, § 287.7(a) provides,

A detainer serves to advise another law enforcement agency that the Service seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Service, prior to release of the alien, in order for the Service to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

The detainer to the Bureau of Prisons states that a Notice
to Appear or other charging document initiating removal
proceedings was served on Petitioner.  It states further,

It is requested that you [the BOP]:

Please accept this notice as a detainer.  This is for
notification purposes only and does not limit your
discretion in any decision affecting the offender's
classification, work, and quarters assignments, or
other treatment which he or she would otherwise
receive.

Federal regulations (8 CFR 287.7) require that you
detain the alien for a period not to exceed 48 hours
(excluding Saturdays, Sundays and Federal holidays) to
provide adequate time for INS to assume custody of the
alien.  ...

Notify this office of the time of release at least 30
days prior to release or as far in advance as possible.

(Answer, Ex. 3, Immigration Detainer - Notice of Action.)

Petitioner has filed a Petition in this Court, asserting:

The petitioner is denied Due Process by his
lawyer's failure to disclaim the stipulated agreement
of the government in regards to deportation of the
petitioner.  The petitioner claims that the Bureau of
Prisons, nor the United States District Court, have the
jurisdiction to order deportation in regards to the
petitioner.  The petitioner claims that he was denied
those rights as given him pursuant to United States
Sentencing Guideline § 5D1.3(d)(6), 8 USC 1228(c)(5); 8
USC § 1228(d)(5).  The petitioner claims that the
Inmate System Management (ISM), FCI Fort Dix, US Bureau
of Prisons (BOP) continue to deprive the petitioner of
his right to due process by continuing placing
detainers against him in violation of the Interstate
Agreement on Detainers and Immigration Nationality Act.
The petitioner claims that the BOP continues to hold
Immigration [warrants] against him past the statutory
forty (48) eight hours pursuant to the Immigration and
Nationality Act (INA) and deprive him of the right to
fair [hearing].  The petitioner claims that the BOP

3

illegally deprive him of hearing without permission of
the US attorney general or the Director of Homeland
Security.

(Petition at 3, Ground One.)[4]

In his Answer, Respondents asserts (1) the Petition must be

dismissed for failure to exhaust administrative remedies; (2)

this Court lacks jurisdiction over the INS, Petitioner is not "in

custody" of the INS so as to challenge the issuance of the

detainer, and the issuance of the detainer by the INS did not

violate any due process rights of Petitioner;[5] (3) the Interstate

Agreement on Detainers is not applicable; (4) and Petitioner's

claim of ineffective assistance of counsel is not cognizable in a

§ 2241 Petition, but must be brought as a motion to vacate, set

aside, or correct sentence under 28 U.S.C. § 2255.

Petitioner has not filed any reply in support of his

Petition or challenging Respondent's construction of his claims.

Accordingly, this matter is now ready for determination.

---

[4] Petitioner also challenged the calculation of his good-
time credits pursuant to 18 U.S.C. § 3624(b).  This Court has
previously entered an Opinion and Order denying this claim.
(Docket Entries Nos. 4, 5.)

[5] As the INS is not a named Respondent, this Court agrees
that there is no possibility of providing relief against the INS
with respect to the issuance of the detainer.

II.   ANALYSIS

A.   The Claim of Ineffective Assistance of Counsel

Petitioner contends that his criminal counsel was ineffective.  As noted by the Court of Appeals for the Third Circuit in In re Dorsainvil, 119 F.3d 245 (3d Cir. 1997), a § 2255 motion, filed in the district of conviction, has been the "usual avenue" for federal prisoners seeking to challenge the legality of their confinement.  See also Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002); United States v. Walker, 980 F.Supp. 144, 145-46 (E.D. Pa. 1997) (challenges to a sentence as imposed should be brought under § 2255, while challenges to the manner in which a sentence is executed should be brought under § 2241, in the district of confinement).

Section 2255, however, contains a safety valve where "it appears that the remedy by motion is inadequate or ineffective to test the legality of [Petitioner's] detention."  Petitioner nowhere suggests that § 2255 is inadequate or ineffective to test the adequacy of counsel representing him in his criminal proceeding.  Accordingly, this Court lacks jurisdiction to reach this issue under § 2241.

B.   The Challenge to the Detainer

Petitioner has not exhausted his administrative remedies.[6]

_____

[6] The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless,

---

aspect of their confinement."  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response.  28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.  Id.  Appeal to the General Counsel is the final administrative appeal.  Id.

exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Similarly, exhaustion of administrative remedies is not required where the issue presented involves only statutory construction, because there is no need for an administrative agency to develop a factual record or to apply its expertise with respect to the circumstances presented.  See Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) (citing U.S. ex re. Marrero v. Warden, Lewisburg Penitentiary, 483 F.2d 656, 659 (3d Cir. 1973), rev'd on other grounds, 417 U.S. 653 (1974)).

Here, Petitioner alleges no facts that would suggest that exhaustion would be futile or otherwise excused.  Accordingly, the Petition must be dismissed for failure to exhaust administrative remedies.

Alternatively, to the extent the administrative remedy process could be viewed as futile in the circumstances presented here, Petitioner fails to allege any facts suggesting that the lodging of an INS detainer based upon his alienage deprives him of due process.[7]  Petitioner does not deny his alien status.  As he has not pursued his administrative remedies, Bureau of Prisons officials have not deprived him of any right to a hearing.

Nor is Petitioner entitled to an immediate determination of the removal issue by immigration officials.  Prior to 1996, the Immigration and Nationality Act ("INA") generally required incarcerated aliens to serve their sentences before being deported (now "removed").  See 8 U.S.C. § 1252(h) (1995) (in relevant part, "An alien sentenced to imprisonment shall not be deported until such imprisonment has been terminated by the release of the alien from confinement.").  In the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, § 438, 110 Stat. 1275 (1996), and again five months later in the Omnibus Appropriations Act of 1997, Pub.L. No. 104-208, Div. C, §§ 305-06, 1996 U.S.C.C.A.N. (110 Stat.) 3009-598, 3009-599, 3009-607, Congress amended § 1252(h) and recodified it at 8 U.S.C. § 1231(a)(4)(B), so that it now grants the Attorney

---

[7] The Court agrees with Respondent that the Interstate Agreement on Detainers, 18 U.S.C. App. 2, is not implicated by an INS detainer.  See U.S. v. Gonzalez-Mendoza, 985 F.2d 1014, 1016 (9th Cir. 1983).

8

General discretion to depart from the general rule and to remove certain aliens prior to the completion of their terms of incarceration.

> (A) ... Except as provided in section 259(a) of Title 42 and [subparagraph (B)], the Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment. ...

> (B) ... The Attorney General is authorized to remove an alien ... before the alien has completed a sentence of imprisonment -- (i) ... if the Attorney General determines that (I) the alien is confined pursuant to a final conviction for a nonviolent offense (other than certain excepted offenses) and (II) the removal of the alien is appropriate and in the best interest of the United States; ...

> (D) No cause or claim may be asserted under this paragraph against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien.

8 U.S.C. § 1231(a)(4)(A), (B), (D) (emphasis added).

Every federal court to consider this provision has determined that the statute vests in the Attorney General the sole discretion and authority to make early removal decisions and that no private right of action for immediate removal exists. See, e.g., United States v. Marin-Castaneda, 134 F.3d 551, 556 (3d Cir.), cert. denied, 523 U.S. 1144 (1998) (addressing the issue in the context of a prisoner's request for downward departure, under United States Sentencing Guideline § 5K2.0, based upon the prisoner's willingness to consent to immediate removal); United States v. Vergara, 133 F.3d 919, 1998 WL 17029 (4th Cir. 1998) (unpubl.); Thye v. United States, 109 F.3d 127,

128-29 (2d Cir. 1997); <u>Koos v. Holm</u>, 204 F.Supp.2d 1099, 1108-09 (W.D. Tenn. 2002); <u>United States v. Bioyo</u>, 1998 WL 850815 (N.D. Ill. Dec. 2, 1998); <u>United States v. Lozada</u>, 1996 WL 502200 (E.D. Pa. 1996).

Thus, Petitioner's confinement until the completion of his term of incarceration does not violate the Constitution or laws of the United States, and Petitioner has no private right of action to compel his immediate removal or immediate consideration for removal prior to the completion of his term of incarceration. <u>See</u> <u>Escobar v. U.S. Dept. of Justice</u>, 2005 WL 1060635 (E.D. Pa. May 5, 2005) (no cause of action to compel resolution of INS detainer).

Finally, Petitioner allege no facts suggesting a constitutional deprivation arising out of limitations on his prison activities related to the detainer.  A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or enacted law.  <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983); <u>Asquith v. Department of Corrections</u>, 186 F.3d 407, 409 (3d Cir. 1999).  With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison

authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995).

It is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement. See, e.g., Olim v Wakinekona, 461 U.S. 238, 245-46 (1983); Hewitt, 459 U.S. at 466-67; Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye, 427 U.S. at 242.

Governments, however, may confer on prisoners liberty interests that are protected by the Due Process Clause. "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). Petitioner does not allege either that a statute confers a liberty interest in being free from the constraints imposed against prisoners subject to an immigration detainer or that the conditions under which he is

11

confined present "atypical and significant hardships."  Thus, Petitioner cannot establish a deprivation of his liberty interests under the Due Process Clause.

"The existence of a detainer, by itself, ordinarily does not affect the inmate's program.  An exception may occur where the program is contingent on a specific issue (for example, custody) which is affected by the detainer."  BOP Program Statement 5322.11 § 524.13.  Thus, several programs prohibit participation by persons subject to detainer.  See, e.g., BOP Program Statement 5280.08 § 570.35 ¶ 10.f. ("The Warden may not ordinarily grant a furlough to an inmate with a detainer.").  These program regulations are a proper exercise of discretion by the Bureau of Prisons.

For example, the regulation limiting participation in the early release program established in 18 U.S.C. § 3621(b) has withstood challenge by persons subject to immigration detainers. United States Code Title 18 Section 3621(b) requires the Bureau of Prisons to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."  18 U.S.C. § 3621(b). As an incentive for prisoners to successfully complete the program, "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but

12

such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B). Pursuant to these statutory sections, and in an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the Bureau has promulgated regulations prescribing certain additional early release criteria, inter alia excluding INS detainees from consideration for early release.  28 C.F.R. § 550.58(a)(1)(I).

In Lopez v. Davis, 531 U.S. 230 (2001), the Supreme Court held that it was a proper exercise of discretion by the Bureau of Prisons to categorically deny eligibility for early release to prisoners with "a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses," 28 C.F.R. § 550.58(a)(1)(iv), or to prisoners whose current offense is one of certain enumerated felonies involving the use or attempted use of force, or involving the carrying, possession, or use of a firearm or other dangerous weapon, or involving sexual abuse upon children, 28 U.S.C. § 550.58(a)(1)(vi).  In reaching this conclusion, the Court first noted that the language of § 3621(e)(2)(B) grants the Bureau discretion to reduce a prisoner's sentence for successful completion of a substance abuse treatment program, but fails to define any parameters by which the Bureau should exercise that discretion.

13

> In this familiar situation, where Congress has enacted
> a law that does not answer "the precise question at
> issue," all we must decide is whether the Bureau, the
> agency empowered to administer the early release
> program, has filled the statutory gap "in a way that is
> reasonable in light of the legislature's revealed
> design."  We think the agency's interpretation is
> reasonable both in taking account of preconviction
> conduct and in making categorical exclusions.

Lopez, 531 U.S. at 242 (citations omitted).  Thus, "the statute's
restriction of early release eligibility to nonviolent offenders
does not cut short the considerations that may guide the Bureau."
Lopez, 531 U.S. at 242.

The Court of Appeals for the Eighth Circuit has stated that
it sees no difference between the categorical exclusion examined
by the Supreme Court in Lopez v. Davis and the categorical
exclusion of prisoners subject to an INS detainer in 28 C.F.R.
§ 550.58(a)(1)(I), holding that the latter is also within the
Bureau's discretion.  United States v. Lopez-Salas, 266 F.3d 842,
848 (8th Cir. 2001).  Here, Petitioner has not suggested any
reason why it is unreasonable for the Bureau to take into account
an INS detainer in determining any aspect of his placement or
program participation.

III.  CONCLUSION

For the reasons set forth above, the Petition will be
dismissed.  An appropriate order follows.

s/Freda L. Wolfson
Freda L. Wolfson
United States District Judge

Dated: September 8, 2005

14